Donald E. MORAN, Appellant,

v.

**FORD MOTOR COMPANY, a
corporation, Appellee.**

No. 72–1417.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 12, 1973.

Decided April 20, 1973.

Martin A. Cannon, Omaha, Neb., for appellant.

John B. Henley, Omaha, Neb., for appellee.

Before LAY and BRIGHT, Circuit Judges, and NICHOL,* District Judge.

LAY, Circuit Judge.

The plaintiff, Donald E. Moran, appeals from the judgment dismissing his claim for personal injury damages allegedly arising from the defendant Ford Motor Company's breach of warranty and negligence. Plaintiff's injuries were incurred in an automobile accident on July 9, 1967, near Millard, Nebraska, when his car swerved off the road and overturned. Plaintiff claims that Ford Motor Company breached its duty to furnish a car reasonably fit for the purposes intended and was negligent, *inter alia*, in the design and assembly of the wheel suspension system.[1] After plaintiff presented his case before a jury the district court granted defendant's motion for a directed verdict holding that plaintiff had failed to make a submissible case for the jury.

On appeal plaintiff raises three grounds of error:

1. Whether the trial court erred in directing a verdict for the defendant for the reason that plaintiff failed to offer sufficient evidence to sustain a prima facie case;

2. Whether the trial court erred in simultaneously refusing a continuance and forbidding the testimony of Herbert Egerer, an engineer and metallurgist, because his name was not promptly communicated to the defendant in compliance with pretrial orders; and

3. Whether the court properly excluded the expert opinion testimony of Robert Stungis, an automobile repairman.

We find it unnecessary to respond to plaintiff's contentions 1 and 2 because of our reversal based on plaintiff's last contention, i. e., the exclusion of the expert testimony of the witness Robert Stungis.

The accident occurred on July 9, 1967, while Moran was driving his 1966 Ford Mustang on a dry, paved highway. He testified that the car began to "shimmy," then suddenly it veered left across the road and rolled over. Following the accident it was discovered that the right front upper ball joint of the car's suspension system was separated. Plaintiff contends that said upper ball joint of the suspension system was defective prior to the accident. Thus he presented considerable evidence at trial to show that although the right side of the front fender collapsed against the right wall of the engine compartment upon impact, the right front wheel and tire were not damaged. Plaintiff's theory is that the wheel had become detached prior to impact because otherwise the wheel would have been within the wheel well at the time of impact and the tire and wheel would have been damaged.

Plaintiff called as an expert witness Robert Stungis, an owner and operator of a body and fender shop. Stungis had been in the auto repair business for eighteen years and had frequently examined wrecked cars. In doing so he had on many occasions inspected suspension systems to discover what parts were broken or worn, what had caused the damages and what pressures were exerted that might cause damage. He stated that he was familiar with the function and operation of a ball joint and that from his experience in the auto repair business he was able to recognize visible wear patterns on most automobile metal parts. Although the trial court allowed Stungis to point out wear that was readily observable, the trial judge did not permit him to testify whether the lower ball joint post was worn, whether the ball was set in the socket straight, whether the wear patterns were uniform, whether he could distinguish between a wear produced condition and one that was produced by an accident, or whether

---

* Sitting by designation.

1. The suit was originally filed in February 1968. It was subsequently dismissed without prejudice after the same suit was refiled on June 3, 1971.

he had an opinion on how the wear occurred. The trial judge believed Stungis was "unquestionably qualified to do repair work" but he was not "qualified metallurgically-wise, or to demonstrate cause."

 A witness may be qualified as an expert based upon his knowledge, skill, experience, training or education. See generally Hill v. Gonzalez, 454 F.2d 1201 (8 Cir. 1972); Harris v. Smith, 372 F.2d 806 (8 Cir. 1967); Skyway Aviation Corp. v. Minneapolis, Northfield & Southern Railway Co., 326 F.2d 701 (8 Cir. 1964); cf. United States v. Atkins, 473 F.2d 308 (8 Cir. 1973); Rules of Evidence for United States Courts and Magistrates, Rule 702, 56 F.R.D. 183, 282 (1972). The test is whether the witness' training and experience demonstrate a knowledge of the subject matter. Hill v. Gonzalez, supra, 454 F.2d at 1203. And practical experience as well as academic training and credentials may be the basis of qualification. Grain Dealers Mut. Ins. Co. v. Farmers Union Coop. Elevator & Shipping Ass'n., 377 F.2d 672, 679 (10 Cir. 1967); cf. United States v. Atkins, supra. See also Mathine v. Kansas-Nebraska Natural Gas Co., Inc., 189 Neb. 247, 202 N.W.2d 191 (1972).

Whether a witness is qualified to testify as an expert is normally within the discretion of the trial court. See, e. g., Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962); United States v. Atkins, supra; White v. United States, 399 F.2d 813 (8 Cir. 1968); Rhynard v. Filori, 315 F.2d 176 (8 Cir. 1963). However, as this court observed in Twin City Plaza, Inc. v. Central Surety & Insurance Corp., 409 F.2d 1195, 1203 (8 Cir. 1969):

> "If the witness, based upon his background skill, possesses extraordinary training to aid laymen in determining facts and if he bases his answer upon what he believes to be reasonable scientific or engineering certainty, generally the evidence should be admitted, subject, of course, to the cross-examination of the adversary. The weaker the scientific opinion or the less qualified the expert, the more vigorous will be the cross-examining attack and undoubtedly the less persuasive will be the opinion to the trier of fact."

In the instant case we believe Stungis possessed sufficient knowledge and practical experience to make him well qualified as an expert witness. The failure to permit his testimony resulted in prejudicial damage to plaintiff's attempt to prove causation. We refuse to speculate, as defendant urges, as to whether plaintiff could have proved a submissible case with Stungis' testimony. To answer this question requires resolution of a hypothetical record not before us. This we have no power to do.

We reverse and remand for a new trial.