563 F.2d 1324
 16 Fair Empl.Prac.Cas. 188, 15 Empl. Prac.
Dec. P 7952
Eulalio FRAUSTO and Peter L. Smith, Individually and on
behalf of all others similarly situated, Plaintiff-Appellant,
v.
LEGAL AID SOCIETY OF SAN DIEGO, INC., Defenders Program of
San Diego, Inc., Gregory E. Knoll and Stanley
Conant, Defendant-Appellee.
 No. 77-1182.
 United States Court of Appeals,
Ninth Circuit.
 Nov. 1, 1977.
 
 Sergio Luis Lopez, San Diego, Cal., for plaintiff-appellant.
 Luce, Forward, Hamilton & Scripps, Walter J. Cummings, III, San Diego, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of California.
 Before TRASK, WALLACE and ANDERSON, Circuit Judges.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 In this Title VII employment discrimination case, appellant Frausto[1] alleged that he was not hired by Stanley Conant (Conant), who was the Executive Director of Defenders Program of San Diego, Inc., (Defenders) because he was a Mexican-American. The issues were tried before the court, sitting without a jury. At the end of plaintiff's case-in-chief, the court granted defendants' motion for involuntary dismissal under Fed.R.Civ.Proc. 41(b). The court ruled that Defenders' failure to hire Frausto was not based on any racial reasons. Frausto appeals. We affirm.
 
 BACKGROUND
 
 2
 Frausto, a Mexican-American male, is an attorney and a member of the California Bar. He graduated from Hastings School of Law in 1972. After graduating he worked for one year as a staff attorney for the Alameda County Legal Aid Society. He worked approximately another year and a half for the Legal Aid Society of San Diego, Inc. His last year with Legal Aid Society was spent as Supervising Attorney.
 
 
 3
 Defenders is an organization which defends indigent persons accused of crimes in the California State courts. Conant, as the Executive Director of Defenders, was the sole person responsible for hiring Defenders' staff attorneys.
 
 
 4
 The events leading to this action began on November 19, 1974, when Frausto submitted an application letter and resume to Conant asking for employment as a staff attorney with Defenders. On November 25 Frausto was interviewed by Conant for a period of about fifteen minutes.
 
 
 5
 Before this interview with Frausto, Conant had learned about certain events occurring in the San Diego Legal Aid office while Frausto was Supervising Attorney, which led Conant to question Frausto's professional judgment.[2] Conant was also aware of some instances where Frausto was unable to get along with other persons.[3]
 
 
 6
 During the interview Conant had hoped that Frausto would dispel these unfavorable impressions. This did not happen. Instead, Conant was even less impressed with Frausto as a candidate for employment. Conant felt that the interview was "a very difficult one" because Frausto was not communicative and refused to discuss things "in an open, candid and forthright manner." Conant felt that Frausto would have a difficult time working well with others because of his general demeanor and what appeared to Conant to be an "underlying hostility."
 
 
 7
 Conant also felt that Frausto had an unsatisfactory employment history for the type of position he was seeking. While Frausto did have two years' experience out of law school, he had already held two different jobs and was then seeking his third. Conant, in turn, was seeking to employ persons who were willing to give a longer term commitment. He found that persons immediately out of law school were usually more willing to accept this longer commitment.
 
 
 8
 Based on this employment history, the impressions gained from the interview, and Frausto's general reputation in the legal community, Conant did not hire Frausto as a Staff Attorney. Subsequent to the Frausto interview, however, several nonMexican-American Staff Attorneys were hired by Defenders. Conant testified that the vacancies which arose in the nine months after Frausto's application had previously been promised to other persons contingent on their passing the Bar examination. The new employees who began working during this period were Wayne Mayer, Gregory Jacobson, Thomas Penfield, and Carol Muehling. Through the clinical program of Defenders or previous interviews, each of them had been told that if they passed the Bar, they would be given positions as other employees left. By the time another opening was available, Frausto was newly employed elsewhere at a substantially better salary.
 
 PROCEEDINGS BELOW
 
 9
 Considering himself wronged by Defenders' rejection of his application, Frausto on July 25, 1975, filed charges of employment discrimination against Defenders and Conant with the California Fair Employment Practices Commission (FEPC).[4] He then filed charges with the Equal Employment Opportunity Commission which issued Frausto its "Right to Sue Letter" on January 30, 1976.
 
 
 10
 Finally, on February 9, 1976, Frausto brought this action in the district court. He charged that Defenders and Conant had violated 42 U.S.C. § 2000e-2(a)(1) (Title VII (of the Civil Rights Act of 1964))[5]; 42 U.S.C. § 1981[6] and 42 U.S.C. § 1985(3)[7].
 
 
 11
 The case was tried before the court. At the end of plaintiff's presentation of the evidence the trial court granted Defenders' aNd conant's motion for involuntary dismissal undEr rule 41(b), fED.r.cIv.proc. Frausto appeals.
 
 THE INVOLUNTARY DISMISSAL
 
 12
 Fed.R.Civ.Proc. 41(b) states in pertinent part:
 
 
 13
 "After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant . . . may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff . . . . If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a)."
 
 
 14
 The trial court made several findings of fact, the most important of which is number 11, which states:
 
 
 15
 "There is no evidence, direct or circumstantial, to support a finding that either defendant refused to hire plaintiff for reasons relating to his Mexican-American ancestry." (C.R. 183).
 
 
 16
 On appeal these findings of fact are not to be set aside unless clearly erroneous. (Rule 52(a), Fed.R.Civ.Proc.), Sime v. Trustees of Cal. State University and College, 526 F.2d 1112, 1113 (9th Cir. 1975). From our reading of the entire record in this case, not only are the findings (especially the one just quoted) not erroneous, but they are absolutely correct.
 
 
 17
 Frausto raises several arguments on appeal, none of which is persuasive. His first salvo is aimed at the trial judge who, Frausto contends, "did not display a generous, liberal attitude toward appellant's cause of action." (Appellant's Opening Brief (AOB), page 12). This is complete nonsense. All that it takes is one reading of the trial transcript to see that the trial court was more than fair and quite liberal in allowing Frausto the opportunity to try and prove his case. The simple fact of the matter is Frausto had no case to prove. Moreover, no litigant can claim entitlement to a trial judge that has a "generous" and "liberal attitude" toward his claim. He is entitled to one who is detached, fair and impartial. That entitlement was fulfilled in this case. Other allegations by Frausto that the trial court was unsympathetic or hostile to Frausto's cause of action are largely untrue[8] and, in any event, are irrelevant to the issues presented on appeal.
 
 
 18
 Next, Frausto argues that he is a victim of racial employment discrimination because he was more qualified than the applicants who were hired after his application, and that Conant and Defenders can give no legitimate nondiscriminatory reasons for not hiring him. We disagree. While true that Frausto did have a slightly higher grade point average than some (though not all) of the staff attorneys hired after his application and he may have had a year or so more experience out of law school, these are not the only factors which make one "qualified" for an employment position as trial counsel. The bulk of Defenders' caseload was the defense of persons charged with crimes. Frausto admitted that he had no criminal experience. Another qualification at Defenders was a willingness to commit oneself for a longer period of time. Here also Frausto was less qualified because he was already applying for his third job in just over two years. And, finally, a key ingredient in a qualified candidate for any position such as a staff attorney in a legal office is a good professional reputation and the ability to get along with people. From the information Conant had gathered, Frausto was less qualified than the other applicants in this area as well.
 
 
 19
 There is nothing in Title VII which prevents employers from requiring that applicants be fit for the job. In Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) the Supreme Court stated:
 
 
 20
 "Congress has not commanded that the less qualified be preferred over the better qualified simply because of minority origins." (401 U.S. at 436, 91 S.Ct. at 856)
 
 
 21
 From our reading of the record, it is clear to us that Conant had several legitimate non-racial and nondiscriminatory reasons for not hiring Frausto as a staff attorney.
 
 
 22
 Frausto next argues that he has established a prima facie case of racial employment discrimination. In McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court held that:
 
 
 23
 "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." (411 U.S. at 802, 93 S.Ct. at 1824.)
 
 
 24
 Once a prima facie case has been established, however, the inquiry does not stop there. "The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas, supra, at 802, 93 S.Ct. at 1824. In this case, even if we were to assume (without deciding) that Frausto had established a prima facie case, Conant and Defenders have more than met their burden by showing that there were many legitimate nondiscriminatory reasons for rejecting Frausto's application. The fact that they met their burden and proved their case through the testimony of Frausto's own witnesses and stipulated documentary evidence is of no moment.
 
 
 25
 Finally, Frausto contends that the relevant statistics presented at trial prove a case of employment discrimination. We disagree. The relevant statistics show that since its inception in 1968, Defenders has hired eight of the twelve Mexican-American persons who have applied for the position of staff attorney. In other words, Defenders has hired 66.67% of all Mexican-American staff attorney applicants. Statistically, how those hired relate to the other staff attorneys and the population in general the trial court found:
 
 
 26
 "In the aggregate, Defenders' hiring of Spanish-surnamed Staff Attorneys and investigators has, as a total percentage of Staff Attorneys and investigators hired, exceeded all available statistical indicia of Spanish-surnamed attorneys as a percentage of San Diego County attorneys; Spanish-surnamed persons classified as 'Professional, Technical, etc.' as a percentage of those persons in San Diego County so classified; and Spanish-surnamed persons in the population and Spanish-surnamed persons in the labor force as a percentage of total persons in the San Diego County population and labor force." (C.R. 183-184)
 
 
 27
 This finding is not erroneous. In short, we find that Frausto cannot point to any facts or figures which show that Defenders has been a participant in racial employment discrimination.
 
 CONCLUSION
 
 28
 We conclude then that the trial court's finding that Frausto was not a victim of racial discrimination is not clearly erroneous and that the trial court did not err in granting Conant's and Defenders' motion for involuntary dismissal under Rule 41(b).
 
 
 29
 More specifically, we hold that under the facts of this case a poor interview, an unstable employment history, a poor reputation in the legal community, and the inability to get along with people are legitimate, nondiscriminatory reasons for rejecting appellant's employment application and are sufficient to defeat an employment discrimination action under Title VII and 42 U.S.C. § 1981.
 
 
 30
 AFFIRMED.
 
 
 
 [1]
 On appeal this case involves appellant Frausto and appellees Defenders Program of San Diego and its Executive Director, Stanley Conant. Pursuant to a stipulation filed July 22, 1976, Legal Aid Society of San Diego and its Executive Director, Gregory E. Knoll, formerly co-defendants in the litigation, were dismissed from this action. Additionally, Peter L. Smith, a plaintiff as against Legal Aid, and Gregory E. Knoll, did not join Defenders or Conant as parties defendant. (C.R. 95, 98). Thus, he is not a party to this appeal
 
 
 [2]
 For example, from Roy Paul, Supervising Staff Attorney of Defenders' Oceanside office, and from Ramon D. Asedo, a member of the Board of Directors of the San Diego Bar Association, Conant had learned, prior to the interview, that while Frausto was Supervising Staff Attorney for Legal Aid, Frausto's office was giving preferential treatment to one or two attorneys by "pipelining" client referrals to these pre-selected attorneys rather than referring the cases to the San Diego Bar Association's referral service where the work would be distributed among several San Diego attorneys. (R.T. 205-206, C.R. 38-40, 44-46.)
 
 
 [3]
 Information on Mr. Frausto's inability to get along with people came from Alice Jago, a former employee of Frausto's. She characterized the relationship this way:
 "Although I strongly desired to remain with Legal Aid until I attained the age of 62, I tendered my resignation that September. I resigned solely because I could not tolerate the manner in which Mr. Frausto conducted activities at the office: Often terming Anglos 'honkies,' he was rude, insolent, derisive, and the source of non-constructive criticism; * * * "
 ". . . I conveyed to Mr. Conant information concerning certain of the specific practices in which Mr. Frausto engaged which I have outlined above."
 (C.R. 42-43, R.T. 204)
 
 
 [4]
 Mr. Anthony Aranita of the FEPC, in an affidavit (prepared by Frausto's counsel) had stated that his investigation of Frausto's charges disclosed that Defenders had discriminated against Frausto based on his natural ancestry. At trial, however, Mr. Aranita himself retracted this statement in the affidavit and admitted that in fact there had been no complete investigation into the matter and he had arrived at no conclusion in the matter. Referring to the statement in his affidavit that he had found discrimination, Mr. Aranita stated, "I believe that's an incorrect quote of my telephone conversation with you (Frausto's counsel) from which you typed this." (R.T. 489; see also, pp. 504-505). Upon questioning by the court, Mr. Aranita agreed that he had not read the prepared affidavit carefully when he signed it. (R.T. 490-493)
 We note with concern that while Frausto quotes this affidavit (which purportedly found discrimination) extensively in his brief, nowhere does he specifically mention the author's own retraction of that very finding.
 
 
 [5]
 42 U.S.C. § 2000e-2 provides, in pertinent part:
 (a) Employers It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, . . . because of such individual's race, color, religion, sex, or national origin; . . .
 
 
 [6]
 42 U.S.C. § 1981 provides:
 § 1981. Equal rights under the law
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
 
 
 [7]
 Defendant's motion for summary judgment on the 42 U.S.C. § 1985(3) charge (conspiracy to deprive constitutional rights) was granted when Frausto's counsel conceded that there were no material issues of fact on this charge
 
 
 [8]
 At this point we would like to make it clear to Mr. Frausto, a member of the Bar, and to his counsel, that we, as an appellate court, do not look favorably upon attempts in their opening brief to impugn the integrity of the trial court. What makes this even worse is that the record had to be misstated to do it. For example, while assailing the trial court's alleged lack of generosity for his case, Frausto at page 14 of his opening brief states: "At one point it was even suggested to appellant's counsel that he go practice law in Mexico. (R.T. 473)." This is completely out of context. The transcript shows that Mr. Lopez had just told the trial court that he "always wanted a Spanish-speaking jury." In response to this the trial court stated: "I think you better go to Mexico, if that's what you want." (emphasis added)
 What disturbs us is that by taking the statement out of context, as they did, and using it where they did, it appears only as a thinly-veiled attempt to suggest that the trial court itself was prejudiced against Mexican-Americans. A reading of the full transcript shows that this is simply not true. Such attempted assault upon the trial court's integrity is not only unwarranted, but unprofessional. Also, on page 14 of his brief Frausto states that: "The court showed an almost personal dislike for appellant in its comments during closing argument. (Tr. 585; Tr. 586; Tr. 589; Tr. 590; Tr. 591; Tr. 593; Tr. 395; Tr. 398; Tr. 601, at 7-18)" Here, again, a reading of these transcript references shows that this is absolutely untrue.
 There are other examples as well, but the point has been made. It is appellate counsel's professional duty to be scrupulously accurate in referring to the record and the authorities upon which he relies in his presentation to the court in his brief or oral argument. He must not mislead the court by misrepresenting the record. Vigorous representation is admirable, but it does not permit misrepresentation. See, e. g., A.B.A. Standards Relating to the Prosecution and Defense Function (1971), Sec. 8.4, Commentary, p. 303; A.B.A. Code of Prof. Responsibility, DR 7-102, 7-106; American College of Trial Lawyers, Code of Trial Conduct, Rules 19 & 23; California Bus. & Prof.Code, Sec. 6068(d).