Lewis Camden PETERS, Plaintiff,

v.

Roy LIEUALLEN, Chancellor of the State Board of Higher Education and the State Board of Higher Education State of Oregon, Defendants.

Civ. No. 78–370–PA.

United States District Court, D. Oregon.

July 1, 1983.

Curtis G. Oler, Kirk M. Barry, San Francisco, Cal., for plaintiff.

Dave Frohnmayer, Atty. Gen., James J. Casby, Jr., Asst. Atty. Gen., Eugene, Or., for defendants.

## BACKGROUND

PANNER, District Judge.

Plaintiff Lewis Peters is a black male. Defendants are the Chancellor of the Oregon State System of Higher Education and the State Board of Higher Education (Board). In 1976 the Board announced a vacancy for the position of Compliance Officer, and the Chancellor appointed a search committee to screen applicants. Forty-nine persons applied for the position. Peters was among the nine candidates selected to be interviewed by the search committee. After interviewing these candidates, each member of the search committee submitted a list of his or her top five candidates. A white woman was ultimately hired for the position.

Peters brought an action against the Chancellor and the Board alleging race discrimination in violation of 42 U.S.C. §§ 1981, 1983, and 2000e *et seq.* I granted summary judgment in favor of defendants on Peters's § 1981 and § 1983 claims. The Title VII claim was tried to the court, and I entered judgment for the defendants.

On appeal, in *Peters v. Lieuallen,* 693 F.2d 966 (9th Cir.1982), the Court of Appeals for the Ninth Circuit held that the § 1981 and § 1983 claims were properly dismissed as against the defendant Board, and to the extent Peters sought damages against the Chancellor of the Board. The court ruled, however, that prospective relief under § 1981 and § 1983 may be available against the Chancellor in his individual capacity. The court reversed and remanded Peters's Title VII claims against all defendants.

The Title VII claims were reversed on two grounds. The court found that I had erroneously relied entirely on a lack of discriminatory intent to support my judgment for the defendants. The court also concluded that I found a lack of discriminatory intent to a legal certainty from the fact that other blacks were included among the five top-ranked candidates, and that this was a misinterpretation of Title VII. I have reevaluated the case in accordance with the instructions of the Court of Appeals. I find that Peters failed to prove a Title VII violation based on either disparate impact or disparate treatment theories. Defendants are therefore entitled to prevail on Peters's Title VII claims, and I need not consider the claim for prospective relief under § 1981 and § 1983.

## ANALYSIS OF DISPARATE IMPACT THEORY

The Court of Appeals found that Peters challenged both the Board's selection system in general and its specific application to him. The court ruled that Peters's allegations constituted both a disparate impact and a disparate treatment case under Title VII.

To establish a prima facie case of discrimination under a disparate impact analysis, a plaintiff must show that a facially neutral employment practice had a significantly discriminatory impact. *Connecticut v. Teal,* 457 U.S. 440, 102 S.Ct. 2525, 2531, 73 L.Ed.2d 130 (1982). Plaintiff need not prove intentional discrimination under this theory, but must show that the employ-

ment practice has a substantial, adverse impact on a group protected by Title VII. *Id.; Gay v. Waiters' and Dairy Lunchmen's Union,* 694 F.2d 531, 537 (9th Cir.1982). Once a plaintiff establishes a prima facie case of disparate impact, the employer must prove either that no disparity exists, or that the practice is necessary to the efficient operation of business. *Connecticut v. Teal,* 102 S.Ct. at 2531; *Dothard v. Rawlinson,* 433 U.S. 321, 331 n. 14, 97 S.Ct. 2720, 2728 n. 14, 53 L.Ed.2d 786 (1977).

The Court of Appeals observed that some of my findings at the conclusion of the trial implied that I regarded the case as presenting both disparate impact and disparate treatment theories. However, my review of the complaint, pretrial order, and proof adduced at trial lends support for defendants' contention that Peters did not plead or prove a Title VII violation based on disparate impact.

Peters's contentions, as asserted in the complaint and the pretrial order, strongly suggest that he was proceeding solely under a disparate treatment theory. Although the requirements for proving a Title VII claim by either disparate impact or disparate treatment are well established, Peters chose to assert only the elements of a disparate treatment claim. Neither the complaint nor the pretrial order refer to a facially neutral selection policy or allege that the Board's selection process has a significantly discriminatory impact on a protected group.

Notwithstanding the question of whether Peters did in fact plead a Title VII violation based on disparate impact, I will analyze the evidence pursuant to the instructions of the Court of Appeals to determine whether Peters established a prima facie case of disparate impact.

The only employment practice that can be involved in this case is the requirement that the applicant selected for the job of compliance officer possess good written and oral communication skills. This criterion is an apparently neutral requirement that could, theoretically, impact disproportion-

ately on a protected group. My findings reflected this concern.

A finding of discriminatory impact on a protected group cannot be based on a theoretical assumption, however. It cannot be simply assumed that blacks would be disproportionately impacted by a selection criterion of good written and oral communication skills. Such an assumption would place on defendants the burden of showing that the criterion was job-related even before the plaintiff established a prima facie case of disparate impact. "The burden of showing job-relatedness cast upon the employer does not arise until the discriminatory *effect* has been shown." *Townsend v. Nassau County Medical Center,* 558 F.2d 117, 120 (2d Cir.1977), *cert. denied,* 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 759 (1978) [emphasis in original], citing *General Electric Co. v. Gilbert,* 429 U.S. 125, 137 n. 14, 97 S.Ct. 401, 409 n. 14, 50 L.Ed.2d 343 (1976).

In *Townsend,* a black blood bank technician attempted to establish that the requirement of a B.S. degree for that position had a disproportionate impact on blacks. The Court of Appeals for the Second Circuit reversed the district court's finding that plaintiff had established a prima facie case of race discrimination. The Court of Appeals stated that "[n]o doubt such a requirement could serve as a pretext for racial or sex discrimination, but this consequence should not be assumed." 558 F.2d at 120. The plaintiff's statistics, showing that far fewer blacks than whites in the general population possessed college degrees, were insufficient to establish a prima facie case of discrimination against minority applicants for the job at issue. *Id.*

Thus, to establish a prima facie case of disparate impact, Peters must show that the criterion of good written and oral communication skills has a substantial discriminatory effect on black applicants for the position of compliance officer. To prevail on this theory, plaintiff "need only demonstrate the lack of objective criteria and a disparity in job promotions." *Wang v. Hoffman,* 694 F.2d 1146, 1148 (9th Cir.

1982). Peters argues that he has satisfied this burden by showing that defendants used "wholly subjective criteria" in selecting applicants and by showing that only one black was employed by the Chancellor's office in an administrative position during the period in question.

Peters correctly indicates that there was evidence regarding the small number of blacks employed in the Chancellor's office. W.T. Lemmon, a member of the search committee, testified that of the 40 or 45 persons employed in the Chancellor's office, only two were black, and only one of these individuals was employed in a professional capacity. There was no attempt by Peters, however, to relate this bare statistic to his claim that the selection criterion for compliance officer impacted disproportionately on blacks. This statistic gives no indication whether qualified blacks applied for other positions in the Chancellor's office. More important, Peters presented no evidence that a criterion similar to the one used for selection of compliance officer was also used for selection of applicants for other positions within the Chancellor's office. Without such evidence, the fact that a small number of blacks were employed in the Chancellor's office does not demonstrate a disproportionate impact.

Nor does the fact that defendants in this case used subjective criteria in selecting applicants establish Peters's disparate impact claim, absent additional evidence. Numerous courts have expressed concern that selection procedures that depend almost entirely upon subjective evaluations may be a ready mechanism for discrimination. *See Senter v. General Motors,* 532 F.2d 511, 528 (6th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976); *Rowe v. General Motors,* 457 F.2d 348 (5th Cir.1972). The use of subjective criteria in a selection system is not, however, prohibited by Title VII, and is not enough to shift the burden to defendant to show job-relatedness. *See, e.g., Ward v. Westland Plastics, Inc.,* 651 F.2d 1266, 1270 (9th Cir.1980); *Gay v. Waiters' and Dairy Lunchmen's Union,* 694 F.2d at 554. A

plaintiff must demonstrate the discriminatory *effect* of the subjective criteria. Peters has failed to offer any such evidence.

Peters also suggests that the selection process in this case must have had a disparate impact on blacks because the search committee was composed of three white males and one white female. This factor, especially coupled with the use of highly subjective criteria, certainly may further provide a "ready mechanism" for discrimination. *See Senter v. General Motors,* 532 F.2d at 528; *Rowe v. General Motors,* 457 F.2d at 359; *Gay v. Waiters' and Dairy Lunchmen's Union,* 694 F.2d at 554. Nonetheless, "[t]he law does not infer that an individual will exercise or has exercised subjective, discretionary responsibilities in an intentionally discriminatory manner merely from the color of his skin." *Gay* at 554, n. 18. Peters must show the *effect* of this factor on minority applicants.

I am unable to find any evidence that a requirement of good written and oral communication skills impacted disproportionately on blacks applying for the compliance officer position. The only evidence of the discriminatory effect of the selection criterion identified by Peters is the fact that he was not hired for the position despite his qualifications. This is insufficient to establish a prima facie case of disparate impact under Title VII.

## ANALYSIS OF DISPARATE TREATMENT THEORY

A prima facie case of disparate treatment is established by proof of facts supporting an inference of intentional discrimination. *Gay,* 694 F.2d at 538. This initial burden is not onerous, and is met by a showing of actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such action was based upon race or other impermissible criterion. *Id.* The plaintiff's immediate burden is discharged by proof of the four elements articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824,

36 L.Ed.2d 668 (1973): (1) that plaintiff belongs to a racial minority; (2) that he applied for and was qualified for a job for which the employer was seeking applicants; (3) that, despite his qualifications, he was rejected; and (4) that, after his rejection, the position remained open and the employer continued to seek applications from persons of plaintiff's qualifications. 411 U.S. at 802, 93 S.Ct. at 1824. The Court of Appeals for the Ninth Circuit has indicated that the fourth element is not applicable to a selection process where a pool of applicants competes simultaneously for a single position. *Peters,* 693 F.2d at 969.

■ The Court of Appeals remanded the disparate treatment issue for a determination of whether there was evidence presented sufficient to establish a prima facie case. I find that Peters has established a prima facie case. Defendants' actions in rejecting Peters, if unexplained, raise an inference of intentional discrimination.

■ Once Peters has established a prima facie case, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for its failure to hire him. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The employer's asserted nondiscriminatory reason was that Peters was not as well qualified as other candidates for the position.

The Board created the position of compliance officer to insure compliance with state legislation prohibiting discrimination in educational programs, services, school, and interschool activities. Testimony at trial indicated that the job required knowledge of the field of higher education, direct or related experience in the compliance area, and an ability to work effectively with colleagues and personnel at the various institutions in the system. Members of the search committee testified that it was essential that the compliance officer communicate effectively orally and in writing, and exhibit sensitivity toward the problems of minorities, women, and handicapped persons. The compliance officer serves as a liaison for the state system of higher educa-

tion with various groups and agencies, and prepares oral and written reports in connection with these duties.

The search committee judged each of the nine candidates qualified for the position of compliance officer. Although the search committee members' impressions of Peters varied, they agreed that he was not as well qualified for the position as other candidates interviewed. Committee members asked each applicant the same questions at the interviews. The committee found that Peters's answers to the questions were not as thoughtful or as well reasoned as the answers of the other applicants. His interview performance suggested to several members that he was not a particularly articulate or effective communicator. One committee member described Peters as self-centered and insensitive to problems of protected groups, especially women. There was testimony that Peters's resume and application were carelessly composed: his narrative statement contained spelling, typographical, and editing errors, and reflected a somewhat unsophisticated writing style.

■ Whether the reasons proffered for Peters's rejection are accurate or not, they are legally permissible. The employer's burden is satisfied if the employer produces evidence of legitimate, nondiscriminatory reasons. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 25 n. 2, 99 S.Ct. 295, 296, 58 L.Ed.2d 216 (1978). The employer need not persuade the court that it was actually motivated by these reasons. "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094. Defendants have carried their burden in this case. The presumption raised by Peters's prima facie case is rebutted.

■ The factual inquiry now proceeds to "a new level of specificity". *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1095. Plaintiff has the burden of demonstrating

that the proffered reasons were not the true reasons for the employer's decision in this case. *Id.* at 256, 101 S.Ct. at 1095. "This burden now merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." *Id.* The plaintiff may accomplish this in two ways: directly, by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly, by showing that the employer's proffered explanation is unworthy of credence. *Id.; McDonnell Douglas,* 411 U.S. at 804–05, 93 S.Ct. at 1825–26. The district court must decide which party's explanation of the employer's motivation it believes. *U.S. Postal Service Board of Governors v. Aikens,* —— U.S. ——, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983).

I must consider, then, whether Peters has demonstrated that a discriminatory reason more likely motivated the employer in this case than the reasons proffered. Although Peters argues that the search committee members all exhibited a negative attitude toward him that was unrelated to his qualifications, I find no evidence, direct or circumstantial, that indicates defendants were motivated by a discriminatory reason to reject Peters.

 The fact that other blacks were included among the five top-ranked candidates is relevant. The Court of Appeals cited *Connecticut v. Teal* for its conclusion that a "bottom-line analysis" is inappropriate in this case. *Peters,* 693 F.2d at 970. Yet resolution of the factual question of intent was not at issue in *Teal. See Teal,* 102 S.Ct. at 2535. The Supreme Court's rejection of the "bottom-line" defense was in the context of proof of disparate impact, for which proof of discriminatory intent is unnecessary. *Id.* Where, as here, plaintiff asserts disparate treatment, intent is the determinative issue. Although proof of the racial mix of an employer's candidates for its work force is insufficient to conclusively establish that an employer's actions were not discriminatorily motivated, a court is "entitled to consider the racial mix of the work force when trying to make the deter-

mination as to motivation." *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 580, 98 S.Ct. 2943, 2951, 57 L.Ed.2d 957 (1978). "The Court has stated that a nondiscriminatory 'bottom line' and an employer's good faith efforts to achieve a nondiscriminatory work force, might in some cases assist an employer in rebutting the inference that [a] particular action had been intentionally discriminatory." *Connecticut v. Teal,* 102 S.Ct. at 2535.

Absent some indication that defendants conspired to place less qualified blacks among the top-five ranked candidates in order to insure that Peters would not be considered further and that a white candidate would ultimately be selected, the fact that other blacks were among the top finalists is evidence of a lack of intent to discriminate. I find no evidence of such a subterfuge by defendants. I am not persuaded that the employer in this case was more likely motivated by discriminatory reasons than the reasons proffered for Peters's rejection.

The next inquiry is whether defendants' explanations of the reasons for Peters's rejection are unworthy of credence. In my findings at the close of trial, I stated that I did not find Peters to be sexist or insensitive. I found that some of the subjective tests that were applied to him were not appropriate in determining his ability to perform the job of compliance officer. I concluded, however, that, while I disagreed with the reasons for Peters's rejection, the rejection was not on the basis of Peters's race.

 The ultimate rejection of eight of the nine finalists was, of course, inevitable. The search committee's reasons for rejecting Peters were rational. The shortcomings criticized in Peters's oral and written presentations could cause the committee to believe that, although qualified, Peters was less well qualified than other applicants. This conclusion is based on the record as a whole. I disagreed with some of the reasons proffered by the employer for the decision not to hire Peters. I also believed that the selection process employed was not the

best indicator of an applicant's ability to perform the job of compliance officer. These observations do not mean, however, that I found the reasons proffered by the employer in this case to be unworthy of credence. Title VII was not intended to "diminish traditional management prerogatives." *Steelworkers v. Weber,* 443 U.S. 193, 205–06, 99 S.Ct. 2721, 2728, 61 L.Ed.2d 480 (1979), quoted in *Burdine,* 102 S.Ct. at 1096. It is not my duty to determine the "best" hiring procedure for the job in question. *See Furnco Construction Corp. v. Waters,* 428 U.S. at 578, 98 S.Ct. at 2950. "[T]he employer has discretion to choose among equally qualified candidates, provided that the decision is not based upon unlawful criteria. The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability . . . ." *Burdine,* 102 S.Ct. at 1097.

 "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 1093. Whether a plaintiff has met this burden is a question "both sensitive and difficult." *Aikens,* 103 S.Ct. at 1482. But the question of intentional discrimination is no different from other ultimate questions of fact. *Id.* A critical review of the evidence on this question in this case has led me to the same conclusion I reached previously: Peters failed to carry his ultimate burden of persuading me that defendants intentionally discriminated against him because of his race.

## CONCLUSION

I find that Peters failed to establish a prima facie case of disparate impact. I find that Peters did establish a prima facie case of disparate treatment, but that this prima facie case was successfully rebutted by defendants' evidence of legitimate, nondiscriminatory reasons for his rejection. I further hold that Peters failed to establish that the employer's reasons were pretextual, and therefore Peters failed to carry his ultimate burden of persuading the court that he was the victim of intentional discrimination. In light of my conclusion as to the Title VII claims, I need not consider the issue of prospective relief against the defendant Chancellor under § 1981 and § 1983.

This opinion shall constitute findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a).