645 F.2d 814
 26 Fair Empl.Prac.Cas. 215
 Juanita CORREA, Plaintiff-Appellant,
v.
NAMPA SCHOOL DISTRICT NO. 131, Rex Engelking, John Merrick,
Gary Doramus, Ellis Albright, John Christensen, T.
J. Comstock, J. M. Hess, Darrel Marks,
Dale Pline, Defendants-Appellees.
 No. 79-4219.
 United States Court of Appeals,
Ninth Circuit.
 Argued Jan. 9, 1981.
Submitted Feb. 13, 1981.
Decided May 18, 1981.
 
 Ismael Chavez, Caldwell, Idaho, Gabriel Hernandez Robles, Boise, Idaho, for plaintiff-appellant.
 Robert J. Koontz, William J. Russell, Boise, Idaho, for defendants-appellees.
 Appeal from the United States District Court for the District of Idaho.
 Before CHOY, KENNEDY, and REINHARDT, Circuit Judges.
 CHOY, Circuit Judge:
 
 
 1
 Correa appeals from a district court order granting Nampa School District's motion for involuntary dismissal of her claims. We affirm.
 
 I. Facts
 
 2
 Appellant Juanita Correa is an American of Mexican descent who was employed by the Nampa School District ("District") Bilingual Education Project as a curriculum supervisor. She was first employed in December 1975 and in August 1976, she signed a standard teacher's contract of employment with the District retroactive to July 1, 1976 and expiring on June 30, 1977.
 
 
 3
 On March 31, 1977, Correa was placed on probation for the balance of the school year after being given a written evaluation of her performance. Correa was subsequently notified by written memorandum dated May 13, 1977, that her contract would not be renewed. No reason was given. Three days later, Correa filed a civil rights complaint with the Office of Civil Rights ("OCR") of the United States Department of Health, Education and Welfare, claiming racial discrimination. On June 6, 1977, OCR began an on-site investigation conducted by Ms. Socorro Rodriguez.
 
 
 4
 On December 2, 1977, Correa filed this action. She alleged deprivation of constitutional rights under 42 U.S.C. §§ 1981, 1983, Title VII of the Civil Rights Act (42 U.S.C. § 2000e, et seq.) and the first and fourteenth amendments to the United States Constitution.
 
 
 5
 At trial, after Correa rested her case, appellees moved for an involuntary dismissal pursuant to Fed.R.Civ.P. 41(b) on all of Correa's claims. The court granted the motion and entered findings of fact and conclusions of law.[1] This appeal followed.
 
 II. Analysis
 A. Title VII Claims
 
 6
 The district court concluded that Correa had failed to establish a prima facie case of employment discrimination; that is, she failed to show that the decision not to renew her contract was based upon her national origin. In McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the court held that a plaintiff could establish a prima facie case of illegally-motivated discrimination by showing: (1) that the plaintiff is within a class protected by Title VII; (2) that the plaintiff applied for a job for which the employer was seeking applicants and for which he had the requisite qualifications; (3) that he was rejected; and (4) that the employer continued to seek applicants with his qualifications. Id. at 802, 93 S.Ct. at 1824. Once this is shown, the burden of production then shifts to the employer to come forward with legitimate non-discriminatory reasons for plaintiff's rejection. Id. If the employer presents non-discriminatory reasons, the burden of production then shifts back to the plaintiff to present evidence that the apparent "legitimate reasons" are a pretext for an underlying discriminatory motive or were applied in a discriminatory manner. Id. at 804, 93 S.Ct. at 1825. The plaintiff, however, retains the burden of persuasion throughout the proceedings. Texas Department of Community Affairs v. Burdine, --- U.S. ----, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).
 
 
 7
 We conclude that even if Correa is considered to have met her initial burden under McDonnell Douglas, the District presented sufficient evidence in the form of affidavits, depositions and cross-examination of Correa's witnesses to establish a reasonable, non-discriminatory reason for her discharge: she was unable to function effectively in her job due to her inability to get along with many other school district employees. The affidavits came from a variety of District employees, including other Mexican-Americans. In Frausto v. Legal Aid Society of San Diego, Inc., 563 F.2d 1324 (9th Cir. 1977), this court held that an inability to get along with people was a legitimate non-discriminatory reason for refusing to hire a person. Id. at 1329.[2]
 
 
 8
 Correa's basic argument on this issue is that the District sought to blame her alone for the admitted serious problems in the Nampa bilingual education program. She claims that the adverse affidavits resulted from a general eagerness among District employees to place the blame on her. This unsupported claim was not sufficient to show that the District's stated reasons for not rehiring Correa were a pretext to hide a discriminatory motive or that the stated reasons were applied in a discriminatory manner.
 
 
 9
 The District was entitled to a Rule 41(b) dismissal on the Title VII claim.
 
 B. Due Process Claim
 
 10
 The district court held that Correa had waived her right to claim a due process violation because she knowingly and voluntarily chose to forego the District's administrative procedures and instead pursued a claim through the Office of Civil Rights. Correa argues that she was unaware of the District's procedures and furthermore that they were inadequate. The finding that she knew of further procedures within the District and chose not to pursue them is based upon sufficient evidence and cannot be said to be clearly erroneous.[3] In addition, there is no evidence that the District's procedures were inadequate. This court has held that where adequate administrative procedures exist, a person cannot state a claim for denial of procedural rights when he has elected to forego a complete hearing. Bignall v. North Idaho College, 538 F.2d 243, 247 (9th Cir. 1976).
 
 C. First Amendment Claim
 
 11
 Correa contends that she was placed on probation and not rehired in retaliation for exercising her first amendment right to freedom of speech and association. This claim refers to her participation in a bilingual education association that was critical of the bilingual program in Nampa. The District admits that her membership in the organization was considered, but only to the extent that her association impaired her ability to fulfill a specified job duty to serve as a communicational link with the administration in reflecting community criticism.
 
 
 12
 In order to make a prima facie case on the issue, Correa was required to show that her conduct was constitutionally protected and that this conduct was a substantial or motivating factor in the District's decision not to rehire her. Mt. Healthy School District v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). The district court found that she presented no credible evidence indicating that any protected first amendment speech activities were a substantial or relevant consideration in the District's decision not to renew Correa's contract. We cannot say that this finding was clearly erroneous.
 
 III. Conclusion
 
 13
 The district court applied the correct legal standards and made detailed findings of fact, none of which can be said to be clearly erroneous. The judgment ordering an involuntary dismissal of all of Correa's claims is
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 It appears that the findings and conclusions were prepared by counsel for the appellees. In Hagans v. Andrus, 651 F.2d 622, (9th Cir. 1981), this court stated:
 Although we have been critical of the wholesale adoption by a district court of the prevailing party's submitted findings (except in highly technical or scientific cases), this practice does not by itself constitute reversible error. We must, however, engage in a more careful analysis of adopted findings than we would have had they been authored by the district judge. Nonetheless, the standard of review for all findings of fact is the clearly erroneous standard. (Citations omitted.)
 Id., at 626.
 
 
 [2]
 In Sime v. Trustees of the California State University and Colleges, 526 F.2d 1112 (9th Cir. 1975), a similar action was dismissed when the district court held that the defendants had met their burden of showing a legitimate non-discriminatory reason by cross-examining the plaintiff's witnesses. This is similar to the situation in this case where the cross-examination of Correa herself seems to have provided a legitimate reason for her discharge
 
 
 [3]
 The District's administrative procedures in dismissal cases are found in the District Policy Manual. Correa testified that she was aware of the existence of procedures and had requested a copy of the policy manual:
 Q. Now, what transpired after that?
 A. Well, after the rebuttal I asked John for the School Districts policy and procedures manual and he in turn asked Mr. Engleking (sic).
 Q. How do you know that he asked Mr. Engleking (sic)?
 A. Because he told me that he had gone to Mr. Engleking (sic) and asked for the School District procedural manual handbook. He related to me that there was one in Mr. Engleking's (sic) office and I could go and check it out from his office.
 Q. Did you do that?
 A. No, I did not.
 Q. Why did you not ask Mr. Engleking (sic) about it?
 A. Because I was frustrated and I felt that I could get the procedural manual from the Education Association and the President, Terry Gilbert.
 Q. Did you go and see Mr. Gilbert about that?
 A. Yes, I did.
 Q. Did he give them to you?
 A. Well, my concern was the evaluation procedure and he did give me some pieces of paper in regards to evaluation procedures in the District.
 Q. You never did get a copy of the procedural manual, is that correct?
 A. No, I didn't. After my confrontation with Mr. Burns and the statement that they had evidence against me, I could sense the situation and I didn't want to go for any more harassment.