**Barbara C. JOHNSON, Plaintiff, Appellant,**

v.

**ALLYN & BACON, INC., Defendant, Appellee.**

**Nos. 82–1886, 83–1048.**

United States Court of Appeals, First Circuit.

Argued Aug. 1, 1983.

Decided March 29, 1984.

---

Edward J. Collins, Wayland, Mass., for Barbara C. Johnson.

John D. Canoni, New York City, with whom Townley & Updike, New York City, was on brief, for Allyn & Bacon, Inc.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and PEREZ–GIMENEZ,* District Judge.

PEREZ–GIMENEZ, District Judge.

Barbara C. Johnson appeals from a decision of the United States District Court for the District of Massachusetts, Robert E. Keeton, Judge, entered September 3, 1982, denying relief for alleged acts of sex discrimination which she claims were committed against her by defendant-appellee, Allyn & Bacon, Inc., (Allyn & Bacon) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (1976). Specifically, Johnson alleges that she was discriminated against because of her sex in connection with (1) her application for promotion to the position of Senior Production Editor; (2) her application for promotion to the position of Production Manager; (3) her application for promotion to the position of Series Editor; (4) the disparity in salary between what she was paid as a Basic Books Editor and what a Series Editor was paid for allegedly comparable work; and (5) her dismissal from Allyn & Bacon.[1] Moreover, Johnson argues in her brief that the district court erred in treating the case entirely as a "disparate treatment" case instead of applying the "disparate impact"

theory to some of her claims. For the reasons set forth below, we affirm the decision of the district court.

## I. Facts

Appellee, Allyn & Bacon, is a Delaware corporation that maintains offices and facilities in Massachusetts, where it publishes textbooks. Appellant, Barbara Johnson, was hired by Allyn & Bacon on April 10, 1972, as a Production Editor for scientific and technical books in the College Editorial Department, at a salary of $10,500 per year. Johnson's duties included copy editing, proof editing and obtaining illustrations for books, and she worked primarily on math and science texts. On August 1, 1973, she was promoted to the newly created position of Basic Books Editor for technical books, and her salary increased from $11,525—to which it had grown as a result of cost of living and merit raises—to $12,-600. Appellant herself was greatly responsible for creating the Basic Books Editor position at Allyn & Bacon and for outlining its contours. As a Basic Books Editor, Johnson worked closely with authors in the writing and editorial process to help them develop marketable manuscripts and iron out problems before the manuscripts went to production editors.

On October 3, 1974, Johnson was put on probation by William Bokerman, Production Manager for Allyn & Bacon's College Editorial Division, and her immediate superior. Bokerman sent Johnson a memorandum (dated October 21, 1974) explaining

---

* Of the District of Puerto Rico, sitting by designation.

1. In her brief, appellant does not go much further than merely to state that for purposes of her appeal she claims violation of 42 U.S.C. § 2000e, *et seq.* in connection with the allegations enumerated above. Only with respect to the allegation of discriminatory termination does she attempt to explain why the district court erred as a matter of law in disallowing her claim. With respect to appellant's claim of discrimination in the failure to promote her to the position of Series Editor, appellant argues that the court below erred in applying "disparate treatment" analysis when instead it should have applied the "disparate impact" theory. With respect to the other two promotion claims,

Johnson merely asks the court to draw an inference of discrimination against her from the trial court's conclusion that Allyn & Bacon excluded women from certain positions within the company—a conclusion which in itself was drawn from statistical evidence concerning the sexual composition of Allyn & Bacon's sales force, but which the court found inadequate to support a showing of intentional discrimination. With respect to the claim of disparity in salary, Johnson merely repeats the same claim the district judge discredited below without any effort to show that finding was erroneous. In effect, Johnson makes little or no effort to show that the district court drew the wrong conclusions from the evidence before it.

that her probation resulted from her disruptiveness within the company—*i.e.*, her "public disputes with supervisors, production editors, and designers, as well as with individuals outside the department and the company", coupled with her "inability or unwillingness to restrain (sic) from subjecting [her] co-workers to marathon one-sided conversations...." The probation period was to last three months, during which time Johnson could receive no promotions or salary increases. On January 17, 1975, shortly after the probation period ended, Johnson was dismissed from Allyn & Bacon. In the termination letter, Bokerman informed her that since the probation period began she had "been involved in a number of incidents that [had] convinced [him] that [her] continued employment with Allyn & Bacon [was] no longer tenable."

Thereafter, Johnson filed a complaint with the Massachusetts Commission Against Discrimination (MCAD), on January 21, 1975, claiming unlawful discrimination in her firing. The MCAD charge was docketed with the Equal Employment Opportunity Commission (EEOC) on January 28, 1975, and on February 20, 1975, Johnson filed an amended charge with the EEOC, also claiming sex discrimination. On August 12, 1976, the MCAD issued a finding of lack of probable cause stating that "(t)here is no evidence to sustain [Johnson's] contention that sex was the reason for her termination" and dismissed her complaint. After a further investigation, the MCAD sustained the lack of probable cause finding on February 8, 1977. On August 4, 1977, the District Director of the EEOC issued a determination dismissing Johnson's charge, stating "there is not reasonable cause to believe that the charge is true." As required by EEOC regulations, the District Director issued Johnson

a Notice of Right to Sue in the United States District Court.

On October 31, 1977, Johnson filed this action. She alleged in the complaint [2] deprivation of rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, claiming that she was the victim of unlawful sex discrimination in the terms and conditions of her employment and that she was dismissed in retaliation for her opposition to the company's discriminatory practices. The court's jurisdiction was invoked pursuant to 42 U.S.C. § 2000e–5(f) and 28 U.S.C. § 1343(4).

A twelve-day bench trial was held before Judge Keeton during parts of June, July and August of 1982. Twenty witnesses testified producing a lengthy transcript, and the parties submitted over sixty written exhibits. On September 3, 1982, the district court issued a memorandum opinion finding against Johnson and for Allyn & Bacon on the merits of all of Johnson's claims, and ordering the action dismissed.[3] In his very detailed and well-reasoned memorandum opinion, Judge Keeton summarized Johnson's contentions as follows:

(1) that she was qualified for, applied for, and was denied the position of Senior Production Editor, after which the position remained open and then was filled by a less qualified man; (2) that she was qualified for, applied for and was denied the position of Production Manager, after which the position remained open and then was filled by a less qualified man; (3) that as a Basic Books Editor she requested and was denied pay increases and certain benefits and work conditions that would have made her pay, benefits, and conditions comparable to those of men doing similar work; (4) that she

---

**2.** The original complaint in this case was filed on October 31, 1977. Subsequently, on November 1, 1979, two years after the action was filed, Johnson filed a motion pursuant to F.R.Civ.P. 15(a) for leave to file an amended complaint. The district judge heard argument on said motion on December 12, 1979, but deferred ruling on it. The motion was never granted. On the first day of the trial of the case, June 22, 1982,

Johnson requested a ruling on her motion to file an amended complaint, and Allyn & Bacon entered its objection. Allyn & Bacon's objection to the introduction of any proof outside the scope of the original complaint was sustained.

**3.** Judge Keeton's memorandum opinion is unofficially reported at 30 EPD, Par. 33,065.

wished to apply for a sales position, but was told that the company did not hire women in sales positions, and that she was also unable to obtain a series editorial position because of her sex; (5) that she was placed on probation and then terminated because of her requests for comparable pay, benefits and conditions and because, in general, she was an aggressive woman who would not accept A & B's unlawful discrimination against her.

Judge Keeton went on to hold that Johnson had not proven a Title VII violation in that she had failed to carry her burden of persuading the court that Allyn & Bacon's actions were motivated by a discriminatory animus. Specifically, the court found that Johnson failed to show that the reasons advanced by Allyn & Bacon for its actions were pretextual. As to Johnson's claims of disparity in salary, Judge Keeton further found that she failed even to establish a *prima facie* case of discrimination, *i.e.*, unequal treatment.[4] Subsequently, the district court entered an order dismissing Johnson's actions.[5] This appeal followed.

## II. Standards of Disparate Treatment Claims

 The central focus of a court confronted with a Title VII sex discrimination case is whether the employer is treating "some people less favorably than others because of their ... sex." *Teamsters v. United States*, 431 U.S. 324, 335, n. 15, 97 S.Ct. 1843, 1854, n. 15, 52 L.Ed.2d 396 (1977). To succeed in such a case the plaintiff must prove that he or she was discriminated against. *See, Teamsters, supra* (where a pattern or practice of discrimination is shown, each member of the discriminated-against class is presumptively entitled to relief, but individual relief may be granted only on an individualized finding of discrimination).

 In determining whether Johnson was discriminated against, the district court correctly applied the analytical framework provided by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas*, a plaintiff asserting a disparate treatment discrimination claim must first establish a *prima facie* case of discrimination by a preponderance of the evidence. If he or she succeeds, the defendant must articulate a legitimate, nondiscriminatory reason for its challenged actions. If defendant does so, plaintiff is then given the opportunity to prove by a preponderance of the evidence that the asserted reason is a mere pretext for unlawful discrimination.[6] *See, Texas Department of Community Affairs v. Burdine,*

---

4. The district judge also found that Johnson failed to even establish a *prima facie* case that Allyn & Bacon discriminatorily denied her a sales position—a position which was usually seen as a prerequisite to serving as a Series Editor.

5. The order of dismissal was entered by the Clerk of the court on September 8, 1982. Thereafter, Johnson filed a motion for a new trial under F.R.Civ.P. 59 and a motion to amend the district court's findings and judgment under F.R.Civ.P. 52. On October 25, 1982, Judge Keeton issued a procedural order denying Johnson's motions. On November 30, 1982, a final order was entered dismissing the case. Johnson filed a premature notice of appeal from Judge Keeton's October 25, 1982, order on November 24, 1982. This became No. 82–1886. On December 29, 1982, Johnson filed a second notice of appeal from the November 30, 1982, final order. This became No. 83–1048. The two appeals were consolidated by this court's February 1, 1983 order.

6. Johnson argues that she is not subject to the *McDonnell Douglas* test because she has presented her claim with "direct evidence", *citing Lee v. Russell County Board of Education*, 684 F.2d 769, 774 (11th Cir.1982) ("Where strong, direct evidence is presented, reliance on *McDonnell Douglas* as the exclusive means of proving the case and as the proper form of rebuttal is incorrect."). Whether or not we might follow *Lee's* analysis in another case, it clearly has no application here, for plaintiff's case was neither made out nor proved by direct evidence. The evidence Johnson calls "direct", entitling her to a different test of discrimination, is merely statistical, which is generally considered "merely a species of *circumstantial* evidence." *Davis v. Califano*, 613 F.2d 957, 962 (D.C.Cir.1979) (emphasis added). According to *Lee*, the *McDonnell Douglas* test was "designed to focus the inquiry where circumstantial evidence is relied on." 684 F.2d, at 774.

450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1980) (*citing McDonnell Douglas Corp. v. Green, supra* ); *Lamphere v. Brown University*, 685 F.2d 743, 748 (1st Cir.1982); *Holden v. Commission Against Discrimination of the Commonwealth of Massachusetts*, 671 F.2d 30, 35–36 (1st Cir.1982); *T & S Service Assoc., Inc. v. Crenson*, 666 F.2d 722, 725–27 (1st Cir.1981).

In *McDonnell Douglas, supra,* the Supreme Court laid down the standards for establishing a *prima facie* case of illegal discrimination. The plaintiff must show by a preponderance of the evidence: (1) that he or she is within a class protected by Title VII; (2) that he or she applied for a job for which the employer was seeking applicants and for which he or she had the requisite qualifications; (3) that he or she was rejected; and (4) that the employer continued to seek applicants with his or her qualifications. *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1014 (1st Cir.1979); *Correa v. Nampa School District No. 131,* 645 F.2d 814, 816 (9th Cir.1981), *citing McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Needham v. Beecham,* 515 F.Supp. 460, 468 (D.Me.1981). In *Texas Department of Community Affairs v. Burdine,* the Supreme Court explained that a complainant's initial burden of establishing a *prima facie* case of disparate treatment is not onerous. 450 U.S. at 253–254, 101 S.Ct. at 1094. In fact, the court has gone further and has stated that:

> (w)here the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff".

*United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). This statement by the court prompted the Court of Appeals for the Second Circuit to conclude that, under *Aikens,* a reviewing court "need not linger long over the question of whether [the plaintiff] in fact established a *prima facie* case" if the defendant has met its burden of articulating a legitimate non-discriminatory reason for its actions. *Sweeney v. Research Foundation of State University of New York,* 711 F.2d 1179, 1184 (2nd Cir.1983). Instead, the reviewing court may focus on "the ultimate question of discrimination *vel non." Id.* We adopt the Second Circuit's reasoning.

In order to meet plaintiff's *prima facie* case, the defendant does not have to prove the absence of a discriminatory motive; it only has to "articulate" a legitimate, non-discriminatory reason. *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 25, 99 S.Ct. 295, 295, 58 L.Ed.2d 216 (1978), *rev'g, Sweeney v. Board of Trustees of Keene State College,* 569 F.2d 169 (1st Cir.1978) (*Sweeney I*); *Lamphere v. Brown University, supra.* The defendant's burden to "articulate" a legitimate reason is *not* a burden to persuade the court that he was in fact motivated by that reason and not by a discriminatory one. "Rather, it is a burden of *production—i.e.,* a burden to *articulate or state* a valid reason." *Loeb v. Textron, Inc.,* 600 F.2d at 1011. The defendant can accomplish this by introducing "admissible evidence which would allow the trier of facts rationally to conclude that the employment decision had not been motivated by a discriminatory animus." *Texas Department of Community Affairs v. Burdine,* 450 U.S. at 257, 101 S.Ct. at 1096. Defendant's burden of production can be met if the evidence presented by him setting forth the reasons for rejection of the plaintiff "raises a genuine issue of fact as to whether [defendant] discriminated against the plaintiff." *Id.* at 254–255, 101 S.Ct. at 1094. Finally, the defendant's explanation of its reasons must be clear and reasonably specific. *Id.* at 258, 101 S.Ct. at 1096, citing *Loeb v. Textron, Inc.,* 600 F.2d at 1011–12 n. 5.

Once the employer has met its burden, the plaintiff "must have an opportunity to demonstrate that the proffered

reason was not the true reason for the employment decision." *Texas Department of Community Affairs v. Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. That is, the plaintiff, to prevail, must prove by a preponderance of the evidence that the employer's proffered reason was not the true reason for the employment decision in question, but was a pretext for discrimination. *Lamphere v. Brown University,* 685 F.2d at 748; *Loeb v. Textron, Inc.,* 600 F.2d at 1014. Plaintiff's burden of proving pretext

> merges with the ultimate burden of *persuading* the court that she has been the victim of intentional discrimination. [Plaintiff] may succeed in this either *directly* by persuading the court that a discriminatory reason more likely motivated the employer or *indirectly* by showing that the employer's proffered explanation is unworthy of credence.

*Texas Department of Community Affairs v. Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095, *citing McDonnell Douglas Corp. v. Green,* 411 U.S. at 804–5, 93 S.Ct., at 1825 (emphasis added). Therefore, the burden of *persuasion* as to the ultimate issue— whether defendant intentionally discriminated against plaintiff on the basis of sex— remains at all times with the plaintiff. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *Lamphere v. Brown University,* 685 F.2d at 748; *Sweeney v. Board of Trustees of Keene State College,* 604 F.2d 106, 108 (1st Cir.1979) (*Sweeney II*), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 733, 62 L.Ed.2d 731 (1980); *Loeb v. Textron, Inc.,* 600 F.2d at 1011.

Before reviewing the district court's findings in light of the preceding legal framework, we note that our standard of review is whether the district court's findings of fact were clearly erroneous or predicated upon an error of law. *Lamphere v. Brown University,* 685 F.2d at 748; *Hilton v. Wyman-Gordon Co.,* 624 F.2d 379, 383 (1st Cir.1980); *Sweeney II,* 604 F.2d at 109 n. 2. We have specifically emphasized that the issue of whether a party was a victim of sex discrimination is a question of mixed law and fact subject to the clearly erroneous standard of review of F.R.Civ.P. 52(a). *Manning v. Trustees of Tufts College,* 613 F.2d 1200, 1203 (1st Cir.1980), *citing Sweeney II,* 604 F.2d at 109 n. 2. This was also the express holding of the Supreme Court of the United States in *Pullman-Standard v. Swint,* 456 U.S. 273, 290, 102 S.Ct. 1781, 1791, 72 L.Ed.2d 66 (1982) ("a court of appeals may only reverse a district court's finding on discriminatory intent if it concludes that the finding is clearly erroneous under Rule 52(a)"). Thus, "to prevail [on the] contention that the district court drew the wrong conclusion from the evidence before it, appellant must show that the district court's conclusion had no reasonable support." *Manning, supra,* at 1203.

### III. Particular Claims of Discrimination

Appellant makes a number of specific claims of discrimination.[7] We will deal with each claim separately. First, Johnson alleges that she applied for and was denied for discriminatory reasons the position of Senior Production Editor. The district court found that she stated a *prima facie* case, but that Allyn & Bacon had a legitimate, non-discriminatory reason for not hiring her for the position. Specifically, the district court found that Allyn & Bacon was interested in hiring someone with supervisory experience for the position, and Johnson had little or no such experience. Apparently, in an effort to show that Allyn & Bacon's proffered reason was pretextual, Johnson stated that she had been told that a woman would not be hired for the position, and that the woman who then held the position was stepping down because of a male co-worker's inability to work with women. However, the district court found that Johnson did not prove Allyn & Bacon's reason to be pretextual and that she had failed to meet her burden of proof on this claim.

---

7. See, *supra,* pp. 67 & 68–69.

Second, Johnson alleges that she applied for and was denied for discriminatory reasons the position of Production Manager. The district court again found that she stated a *prima facie* case, but that Allyn & Bacon offered a legitimate, non-discriminatory reason for not promoting her to the position. The court found that the position of Production Manager was a high supervisory position, and Johnson lacked the supervisory skill and experience which would have made her a probable candidate for the job. The court also found that Allyn & Bacon had reason to suspect that Johnson had trouble getting along with some of the very employees that she would be called on to supervise had she been given the position. The court concluded that Johnson failed to rebut the legitimate, non-discriminatory reasons Allyn & Bacon offered for not promoting her to the position of Production Manager.

Third, Johnson claims that as a Basic Books Editor she performed work which was comparable and required much of the same skills as that performed by Series Editors, but that she did not receive the same salary and benefits as the Series Editors. With respect to this claim, the district court simply found that the positions were different since the Series Editor had the added responsibility of obtaining authors and negotiating and signing contracts with them. Johnson's own witness testified to the differences between the two positions. In addition, the district court found (1) that while it was true that Senior Series Editors received more pay than Johnson did as a Basic Books Editor, the Senior Series Editors had been with the company longer than Johnson; and (2) that Associate Series Editors received salaries that were *less* than Johnson's although the former had been with the company as long or slightly longer than her. Thus, the district court concluded that Johnson had not even established a *prima facie* case of unequal treatment, and that, in any event, she did not prove that Allyn & Bacon's proffered reasons for the allegedly differing treatment were pretextual.

Fourth, Johnson contends that she applied for and was denied for discriminatory reasons the position of Series Editor, and that she was precluded from applying for a sales position, usually seen as a prerequisite to becoming a Series Editor, because of her sex. The district court found that statistical evidence concerning the sexual composition of Allyn & Bacon's sales force and series editorial staff showed that women were excluded from sales and series editorial positions. However, citing our opinion in *Lamphere v. Brown University, supra,* the court explained that statistical evidence alone is not sufficient to prove intentional discrimination when the statistics provided are incomplete because they do not include information as to the number of qualified women in the relevant labor market. Allyn & Bacon indicated that its reason for not promoting Johnson to the position of Series Editor, as well as to that of sales person, was Johnson's lack of qualifications; namely, her lack of some sales experience and a college degree, and her inability to get along with people inside and outside of the company. The court found that Johnson, in fact, lacked the required qualifications. Thus, the court concluded that Allyn & Bacon had articulated a legitimate reason for not hiring Johnson, and that Johnson failed to prove that reason was pretextual. In effect, the court also found that since Allyn & Bacon's stated reason was a negation of one of the elements of Johnson's *prima facie* case—*i.e.*, that she was qualified—its finding that Allyn & Bacon's reason was not pretextual was also a finding that Johnson did not establish her *prima facie* case.

Finally, Johnson alleges that she was placed on probation and later fired in retaliation for her requests for equal treatment to that received by her male co-workers. Allyn & Bacon stated that it placed on probation and later fired Johnson because she was "a disruptive influence within her department" and was unable to get along with some of her co-workers, as well as with other persons outside of the company, such as authors. The district court, based on the testimony of witnesses, documenta-

ry evidence and its own observations of Johnson during the trial, found that Allyn & Bacon's version of the facts was more credible. Thus, the court held that Allyn & Bacon provided a legitimate, non-discriminatory reason for placing Johnson on probation and then firing her, and that Johnson did not prove the stated reason was pretextual.

In her brief on appeal, Johnson contends that the district court's holding with respect to her claim of discriminatory termination was erroneous as a matter of law. We disagree. The district court correctly relied on *Correa v. Nampa School District No. 131*, 645 F.2d 814 (9th Cir. 1981), for the proposition that an inability to get along with people is a legitimate non-discriminatory reason for firing an employee. The finding that Johnson was unable to get along with her co-workers and authors is based upon sufficient evidence and cannot be said to be clearly erroneous.

In the instant case, the district court engaged in a probing analysis of Allyn & Bacon's evaluation process and concluded that the ultimate decisions concerning Johnson were not based on Johnson's sex. We cannot say that the findings of fact underlying the district court's conclusion are clearly erroneous. Johnson has not even attempted to show that the district court's conclusion had no reasonable support. Upon careful consideration of the briefs, the record, and the district court's opinion, we affirm the judgment entered below.

### IV. Appellant's Disparate Impact Argument

Appellant Johnson argues in her brief that the district court applied the wrong legal standard when it analyzed all of her claims under the disparate treatment theory instead of using the disparate impact approach. The problem with this argument is that this case was brought and tried under a disparate treatment theory.

At no point did Johnson's trial counsel contend the disparate impact approach should be followed. On the contrary, counsel for Allyn & Bacon specifically pointed out that the case was a disparate treatment case, and no objection to Allyn & Bacon's counsel's statement was forthcoming from Johnson's counsel.

Litigants cannot try their case under one theory and then urge a remand on appeal so it can be tried again under a different theory. This is precisely what Johnson has done. We have repeatedly held that a legal issue or theory not presented to the trial court cannot be raised for the first time on appeal. *Marcial Ucin, S.A. v. SS Galicia, Her Engines, Tackle, etc.*, 723 F.2d 994 at 1002 (1st Cir.1983); *North American Industries, Inc. v. Feldman*, 722 F.2d 893 at 895, n. 1 (1st Cir.1983); *Greenwich Federal Savings & Loan Association v. Fidelity Bond & Mortgage Co.*, 714 F.2d 183, 184 (1st Cir.1983); *Goldman v. Sears, Roebuck & Co.*, 607 F.2d 1014, 1017 (1st Cir.1979), *cert. denied*, 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980); *Furtado v. Bishop*, 604 F.2d 80, 87 (1st Cir.1979), *cert. denied*, 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980); *Johnston v. Holiday Inns, Inc.*, 595 F.2d 890 (1st Cir.1979); *Dobb v. Baker*, 505 F.2d 1041, 1044 (1st Cir.1974); *Roto-Lith, Ltd. v. F.P. Bartlett & Co.*, 297 F.2d 497, 500 (1st Cir.1962). Although this rule is not absolute, it is relaxed only in "horrendous cases where a gross miscarriage of justice would occur", and the new theory must be "so compelling as virtually to insure appellant's success." *Johnston v. Holiday Inns, Inc.*, 595 F.2d at 894. In the case at bar, we see no reason for relaxing the rule against appellate review of a position not advanced in the district court. We do not find that failure to consider Johnson's new position would result in a "gross miscarriage of justice", nor is it "so compelling as virtually to insure [Johnson's] success." [8]

---

**8.** Our examination of the record convinces us that, even if the disparate impact theory had been followed below, Johnson failed to meet

her basic requirement of proving that Allyn & Bacon employed a selection device which, although facially neutral, produced a significantly

## V. Attorney's Fees and Costs

■ The only issue left for us to decide is the question of attorney's fees and costs. Appellee, Allyn & Bacon, claims we should award them attorney's fees and double costs pursuant to Rule 38 of the Federal Rules of Appellate Procedure, which provides that "just damages" and "double costs" may be awarded to an appellee if the court of appeals determines the appeal is frivolous. The term "just damages" has been interpreted to include attorney's fees in appropriate cases. *See, e.g., Harris v. Plastics Manufacturing Co.*, 617 F.2d 438, 440 (5th Cir.1980).

The Supreme Court held in *Christianburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978), that a prevailing defendant in a Title VII action could be awarded attorney's fees "upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation, even though not brought in subjective bad faith." This holding of the Supreme Court has been held applicable to prevailing defendants-appellees. *See, e.g., Bugg v. Allied Industrial Workers*, 674 F.2d 595, 599–600 & n. 10 (7th Cir.), *appeal dismissed*, 459 U.S. 805, 103 S.Ct. 29, 74 L.Ed.2d 43 (1982); *Marks v. Prattco, Inc.*, 633 F.2d 1122, 1125–26 (5th Cir.1981). Moreover, in *Fischer v. Adams*, 572 F.2d 406, 409 (1st Cir.1978), we noted that the time spent on an appeal in a Title VII action is also compensable as part of reasonable attorney's fees. Thus, we conclude that an appellate court may exercise its power to award attorney's fees to a prevailing defendant-appellee if the appeal is "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." However, we also note that the Supreme Court, in *Christianburg Garment Co.*, cautioned that the exercise of the power to grant fees to a prevailing defendant must be made under a stricter standard than is applied when considering awards to prevailing plaintiffs. This limitation should also extend to a defendant-appellee. *See, Bugg*, 674 F.2d at 600.

■ Evaluating the circumstances of this case, it is apparent that an award of attorney's fees to Allyn & Bacon for appellate work is not appropriate. Johnson made out several *prima facie* claims and the case could well have gone the other way if the district judge had believed her. When we consider the Supreme Court's admonition in *Christianburg* and the fact that Johnson had an appeal as of right, we do not think that this is the type of case which would normally warrant an award of attorney's fees in favor of defendant-appellee.

However, we also note that Johnson has absolutely failed to present any arguable reason why the district court erred in its disposition. She basically restates arguments that the district court properly rejected. Her additional allegation is based on a theory which was not even presented to the district court. Some penalty should attach to taking up our time with such a perfunctory appeal. Thus, we believe in the circumstances that appellee is entitled to recover double costs pursuant to F.R. App.P. 38. *See, Good Hope Refineries, Inc. v. R.D. Brashear*, 588 F.2d 846 (1st Cir.1978); *First National Insurance Co. of America v. Lynn*, 525 F.2d 1 (1st Cir. 1975); *NLRB v. Bedford Discounters, Inc.*, 484 F.2d 923 (1st Cir.1973).

## VI. Conclusion

The district court applied the correct legal standards and made detailed findings of fact, none of which can be said to be clearly erroneous. Thus, the decision ordering dismissal of all of Johnson's claims is affirmed. Appellee is awarded double costs.

---

adverse impact on women. *Dothard v. Rawlinson*, 433 U.S. 321, 329, 97 S.Ct. 2720, 2726, 53 L.Ed.2d 786 (1977). Although the statistical evidence before the court concerning the sexual composition of Allyn & Bacon's sales force and series editorial staff showed a sexual imbalance, we agree with the district court that those statistics, by themselves, are not adequate to show discrimination. *See, e.g., Lamphere v. Brown University*, 685 F.2d at 750; *Grano v. Department of Development of City of Columbus*, 637 F.2d 1073, 1078 (6th Cir.1980).

*For the foregoing reasons, the decision of the district court is hereby affirmed.*