Ariel G. DANCE, Plaintiff, Appellant,

v.

Dillon S. RIPLEY, Defendant, Appellee.

No. 85–1237.

United States Court of Appeals,
First Circuit.

Argued Sept. 9, 1985.

Decided Nov. 7, 1985.

tion.

William P. Homans, Jr., Boston, Mass., with whom Homans, Hamilton, Dahmen & Marshall, Boston, Mass., was on brief for appellant.

Richard E. Welch, III, Asst. U.S. Atty., Boston, Mass., was on brief for appellee.

Before COFFIN, Circuit Judge, WISDOM,[*] Senior Circuit Judge, and BREYER, Circuit Judge.

COFFIN, Circuit Judge.

Ariel Dance appeals from the decision of the United States District Court for the District of Massachusetts granting defendant's motion under Fed.R.Civ.P. 41(b) to dismiss her Title VII claim. The district court dismissed the Title VII claim, 42 U.S.C. § 2000e et seq., on the ground that at the close of her evidence plaintiff had failed to establish a right to relief. We are presented with the question of whether a vacant position for which plaintiff had applied was abolished because of illegal discrimination. We have jurisdiction under 28 U.S.C. § 1291. For the reasons stated below, we affirm.

Plaintiff, a black woman, was employed as an administrative secretary (IS–7) to the Manager of Research Services at the Smithsonian Astrophysical Observatory (Smithsonian). In August, 1974, she applied for the position of Administrative Assistant (IS–9/11) at the Smithsonian after seeing the job posting and being encouraged to apply for the position by Joanne Tondrick, Personnel Director. Two other people filed applications for the position: John Yasigian and Bob York, both white men. In September, she was interviewed by the selecting official, Robert Noyes, Associate Director of the Solar and Stellar Physics Division, who told her that he was looking for someone to administer his office so that he would be able to concentrate on science. His secretary, Penelope Gregory, would remain at her job. After her interview with Noyes, plaintiff was taken to meet Pendleton White, another department supervisor. White commented that he would appreciate assistance from Noyes' department. York withdrew his application for the position; Yasigian was also interviewed by Noyes and White.

On Friday, October 18, 1974, plaintiff was told by Tondrick that the position would be given to Noyes' secretary, Grego-

* Of the Fifth Circuit, sitting by designation.

ry, a white woman. Plaintiff responded that that was unfair, to which Tondrick replied that Noyes could have hired plaintiff and then fired her. Plaintiff stated that the action was unacceptable. Later that day, plaintiff spoke to Helen Beatty, the Smithsonian Equal Employment Opportunity (EEO) Counsellor. On Monday, October 22, 1974, plaintiff learned that Harris Rosenthal, head of personnel at Smithsonian, had spoken to the EEO officer for the Smithsonian in Washington, D.C. and was told that abolishing a position was within a manager's prerogative. On or about October 22, 1974, the position vacancy was withdrawn and the position was abolished. At the time of the termination of the position, plaintiff and Yasigian were the two remaining applicants.

Plaintiff presented her allegation of race discrimination to an Equal Employment Counselor but no resolution was reached. Plaintiff then filed a formal complaint of discrimination with the Office of Equal Employment Opportunity, Smithsonian, Washington, D.C. An investigation was completed and soon thereafter a final decision was issued. It was found that the evidence did not support plaintiff's allegations of illegal discrimination. The EEO Office found that the termination of the position was not for discriminatory reasons; rather, Noyes and White did not feel that either of the two remaining candidates (plaintiff and Yasigian) were qualified for the job, and Noyes doubted that the duties listed in the job description reflected those needed by him.

Plaintiff filed her Title VII action in the district court pursuant to 42 U.S.C. § 2000e–16 as a federal employee against Dillon Ripley, the head of an executive agency. Trial was commenced and the parties introduced several joint exhibits, including the final decision of the EEO Office described above. Plaintiff was the only witness called for the plaintiff's case; after she testified, the plaintiff rested. The government moved to dismiss the action pursuant to Rule 41(b), arguing that plaintiff failed to establish a prima facie case of discrimination, *see Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981), and, in the alternative, that plaintiff's prima facie showing was rebutted by the evidence and statements admitted during plaintiff's case establishing Smithsonian's legitimate, nondiscriminatory reasons for terminating the position and that plaintiff had failed to show that these reasons were merely pretexts for unlawful discrimination. On January 3, 1985, the district court granted the defendant's motion, issuing findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a). The court concluded that:

"Mrs. Dance has not presented a sufficiency in this Title VII case to conclude that she was rejected by reason of unlawful discrimination while she was seeking realization of a promotional opportunity."

Plaintiff appeals from this decision.

Before turning to discussion of plaintiff's arguments, we set out the rules regarding burdens of production and persuasion in Title VII cases. Under the analytical framework provided by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff asserting a disparate treatment claim must first establish a prima facie case of discrimination by a preponderance of the evidence. If he or she succeeds, the defendant must articulate a legitimate, nondiscriminatory reason for its challenged actions. If defendant does so, plaintiff must then prove by a preponderance of the evidence that the asserted reason is a mere pretext for unlawful discrimination. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1980); *Johnson v. Allyn & Bacon, Inc.*, 731 F.2d 64, 69–70 (1st Cir.1984); *Lamphere v. Brown University*, 685 F.2d 743, 748 (1st Cir.1982).

The plaintiff's initial burden of establishing a prima facie case of disparate treatment is not onerous. *Burdine*, 450 U.S. at 253–54, 101 S.Ct. at 1093–94. Moreover, the Supreme Court has stated that:

"Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff

really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether 'the defendant intentionally discriminated against the plaintiff.'" *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093). This statement prompted the Court of Appeals for the Second Circuit to conclude that a reviewing court "need not linger long over the question of whether [the plaintiff] in fact established a prima facie case" if the defendant has met its burden of articulating a legitimate nondiscriminatory reason for its actions. *Johnson,* 731 F.2d at 70 (quoting *Sweeney v. Research Foundation of State University of New York,* 711 F.2d 1179, 1184 (2d Cir.1983)). This circuit has adopted the Second Circuit's reasoning, determining that a "reviewing court may focus on 'the ultimate question of discrimination vel non'". *Johnson,* 731 F.2d at 70 (quoting *Sweeney,* 711 F.2d at 1184)).

▮ Plaintiff first argues that, in granting defendant's Rule 41(b) motion, the district court ruled that she failed to make out a prima facie case. In support of her contention, plaintiff claims that the district court followed the methodology referred to in *Burdine;* that is, it considered initially whether to dismiss the action for lack of a prima facie case. We disagree. We hold that the district court's ruling constituted a finding that the plaintiff, even assuming the existence of a prima facie case, failed to satisfy her ultimate burden of persuasion in proving discrimination. Although the district court's findings could have been more explicit, we do believe that the district court addressed the ultimate "discrimination" question when it made its findings. When the district court ruled on defendant's Rule 41(b) motion, the plaintiff had already presented her entire case. The *McDonnell Douglas* analytical framework does not call for the prima facie question to be addressed in the plaintiff's case, the nondiscriminatory reasons to be articulated during the defendant's case, and finally the demonstration of pretext to be proved in plaintiff's rebuttal case. This circuit, along with other circuits, has rejected the argument that *McDonnell Douglas* and *Burdine* set forth a "rigid, three-step proof process in Title VII cases". *Holden v. Commission Against Discrimination,* 671 F.2d 30, 36 (1st Cir.1982). *See Mitchell v. Baldrige,* 759 F.2d 80, 84 (D.C.Cir.1985); *Gaballah v. Johnson,* 629 F.2d 1191, 1200 (7th Cir.1980); *Sime v. Trustees of the California State University and Colleges,* 526 F.2d 1112, 1114-15 (9th Cir.1975). *See also Aikens,* 460 U.S. at 715, 103 S.Ct. at 1482. Instead, the purpose of the allocations of the burdens in Title VII cases is to "sharpen the inquiry into the elusive factual question of intentional discrimination". *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094.

Given the evidence presented in plaintiff's case, it is clear that more than just the first analytical step was addressed before the plaintiff rested. The defendant's legitimate, nondiscriminatory reasons were brought out during the plaintiff's case. These reasons were explicitly articulated in the EEO decision admitted into evidence by the plaintiff as a joint exhibit. The EEO decision states:

"Dr. Noyes, the selecting official, and Mr. Pendleton P. White, Division Administrator, interviewed two candidates for the position vacancy number 56, one Black Female and one White male. In their testimony Dr. Noyes and Mr. White said that neither candidate met the qualifications requirement for the particular job. Dr. Noyes further testified that he had latent doubts whether the duties as described in the job description actually reflected those needed by him. He said it was for these reasons that neither candidate was selected."

Moreover, during her testimony, plaintiff admitted that she received a copy of the EEO decision, read it, and understood the defendant's stated reasons for terminating the position. In concluding that the defendant's Rule 41(b) motion should be granted, the district court used language that also shows that its analysis went beyond the threshold question:

"[T]here is no evidence to show anything other than that Dr. Noyes decided either

that both of those persons were not qualified for the position, or that he didn't need such an assistant after all."

Plaintiff points to the district court's statement that "[p]laintiff's counsel argued that Mrs. Dance has established a prima facie case" as evidence of the context of the district court's findings. The district court did not refute counsel's argument; the court never stated that the plaintiff failed to make such a showing. Instead, in making this statement, the district court was merely summarizing counsel's oral argument after the Rule 41(b) motion was made. It is worthwhile noting that in its oral argument defendant contended not only that plaintiff failed to make a prima facie case, but, in the alternative, that she failed to prove discrimination because she failed to rebut the defendant's nondiscriminatory reasons. For these reasons, we are convinced that the district court considered the ultimate question of discrimination and not merely whether plaintiff satisfied her prima facie case.

 We are also unpersuaded by plaintiff's second claim—that by addressing more than the prima facie question the district court deprived plaintiff of an opportunity to demonstrate pretext. As we have observed, absent a finding that plaintiff failed to make out a prima facie case, the district court may dismiss the complaint at the close of plaintiff's case if: one, during plaintiff's case, the defendant's nondiscriminatory reason was articulated; two, plaintiff had notice and an opportunity to rebut the proffered nondiscriminatory reason; and three, plaintiff failed to rebut the reason persuasively. *Mitchell v. Baldrige*, 759 F.2d at 87; *Holden*, 671 F.2d at 36. Applying these standards to the dismissal of plaintiff's charges in this case, we find that the dismissal was appropriate. As stated above, the defendant's nondiscriminatory reasons appeared in a memorandum from the EEO Office. These reasons were received, read, and understood by plaintiff. The memorandum was introduced into evidence by plaintiff as a joint exhibit. This memorandum gave plaintiff ample notice of defendant's reasons. *See Holden*, 671 F.2d

at 36. During her case, plaintiff had an opportunity to rebut the nondiscriminatory reasons introduced into evidence and referred to during plaintiff's cross-examination. *See Mitchell*, 759 F.2d at 88; *Holden*, 671 F.2d at 36. Plaintiff failed to attack the reasons; she presented no evidence tending to show the pretextual nature of those reasons. This is not a case where a Fed.R.Civ.P. 56 motion for summary judgment was granted before plaintiff presented her case. Here, defendants moved to dismiss plaintiff's claim pursuant to Rule 41(b) after the plaintiff completed the presentation of her evidence.

For the reasons discussed above, the district court was properly positioned to determine whether the plaintiff carried her ultimate burden of persuasion on the factual question of intentional discrimination. The nondiscriminatory reasons for the allegedly discriminatory termination of the position were squarely before the court. Plaintiff failed to show that the reasons advanced by the defendants were pretextual. Therefore, the decision of the district court is *affirmed*.