**Geraldine CYRUS**

v.

**F.W. WOOLWORTH CO.**

**Civ. A. No. 85–2637.**

United States District Court,
E.D. Pennsylvania.

June 24, 1986.

Sam Sims, Chester, Pa., for plaintiff.

Jane Dalton Elliott, Amy E. Wilkinson, Duane, Morris & Heckscher, Philadelphia, Pa., for defendant.

## MEMORANDUM OF DECISION UNDER RULE 52

LUDWIG, District Judge.

This is a civil rights action arising from the termination of plaintiff's employment by defendant. Plaintiff claims unlawful retaliation. Title VII, 42 U.S.C. § 2000e–3(a).[1] Jurisdiction attaches under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e–5(f)(3).

The following facts are uncontested:[2]

Plaintiff, Geraldine Cyrus, is a black female citizen of the United States, a resident of Philadelphia, Pennsylvania, and a former employee of the defendant. Defendant, F.W. Woolworth ("Woolworth"), has continuously been and is now a corporation doing business in the Commonwealth of Pennsylvania, where it is engaged in the business of selling various dry goods to the public a[t] a retail outlet at 2318 North Front Street, Philadelphia, Pennsylvania. Defendant has continuously been and is now an employer engaged in industry affecting commerce, employing fifteen or more employees for each working day in at least twenty calendar weeks of each year. Plaintiff was employed by Defendant in the latter's store at 2318 N. Front Street, as a waitress/salesperson from June 9, 1976 to November 28, 1981—the date of her second termination by Defendant.

Plaintiff began employment with Woolworth in June, 1976 as a salesgirl. On June 30, 1980, Mrs. Cyrus was terminated by Mr. Rice, the manager of the store at that time, for leaving money for two customers' bills on top of the cash register at the luncheonette counter. She was reported to the manager of Woolworth by Merit Protective Service, a detective agency hired by the store to observe employees and customers. On July 7, 1980, Mrs. Cyrus filed a complaint with the Philadelphia Commission on Human Relations alleging that Woolworth had discriminated against her because of her race in terminating her because (1) other employees, in particular a Puerto Rican employee, had left money on top of the cash register with the manager's knowledge and had not been terminated and (2) Plaintiff had herself left money on top of the cash register and not received any warning that this practice was against store policy.

In September, 1980, Mrs. Cyrus and Woolworth reached a settlement agreement which provided that:

---

1. Claims of racial and sexual discrimination were withdrawn at trial.

2. These facts were submitted in a joint proposed pre-trial order under Local Rule 21(d)(2).

1. Mrs. Cyrus was to be reinstated with her original seniority date;

2. Woolworth was to withdraw its opposition to Mrs. Cryus' unemployment claim; and

3. Woolworth was to remove any negative inferences from Mrs. Cyrus' personnel file inserted in connection with the June 30, 1980 incident.

On or about September 19, 1980 Mrs. Cyrus resumed working at Woolworth as a salesgirl. On this date she also signed a Personnel Supervisor's checklist. (Defendant's Exhibit 3.) The store policy on employee purchases in effect while Mrs. Cyrus was employed by Woolworth required an employee to pick up a purchase slip from either the office or the manager and to carry that slip with her while selecting the items to be purchased. Once the employee had selected all the items to be purchased that day, she was to take the items and the slip to the register to be rung up by another employee. The other employee bagged the merchandise, tore off a a stub from the purchase slip and stapled the bag shut with the stub on the outside. The bag was then placed in the office or under the lunch counter. Either the manager or the assistant manager brought the bag to the front of the store when the employee was ready to leave, handed the bag to the employee and tore the stub off.

A little over a year later on November 28, 1981, Mrs. Cyrus was again terminated, this time for not following Woolworth's policy on employee purchases. Keith Edwards, the assistant manager at the time, decided to close the store fifteen minutes earlier than usual because business was slow. Mrs. Cyrus had picked up some items, placed them in a bag and stapled the bag shut before paying for them. Mr. Edwards noticed that Mrs. Cyrus had this stapled bag of unpaid for goods and took the bag away from her.

Mrs. Cyrus was terminated the following day, without warning or written notice, for breaking store policy. At the time Mrs. Cyrus was terminated there were twelve employees including the manager and assistant manager. All were black except the manager, Udia Nataraj, who was Indian, the stock room person, who was Puerto Rican, and the bookkeeper, who was white. Mr. Edwards, the assistant manager responsible for Mrs. Cyrus' termination, was black.

Plaintiff has met the procedural requirements necessary to bring a race discrimination action in federal court.

From the evidence, I find the following facts: In 1980, given her choice of stores by defendant, plaintiff returned to the store where she had previously worked. During her absence Mr. Nataraj had become store manager and Mr. Edwards assistant manager. On November 28, 1981 plaintiff was dismissed by the district manager, Mr. Mundy, after Edwards reported that plaintiff had violated company policy on employee purchases. Mundy concluded that plaintiff had concealed store merchandise under suspicious circumstances. Defendant's employees were dismissed from employment and were not given a second chance when suspected of attempted theft of merchandise. Mundy's decision to dismiss plaintiff was approved by Mr. Hullhorst, defendant's then vice-president for human resources. Hullhorst had made the decision to re-instate plaintiff after the first termination. Mundy and Edwards were not involved in the first termination.

Plaintiff was aware of defendant's policy on employee purchases. It had been explained to her when she began working for defendant in 1976 and when she resumed employment in 1980. Reference to it appeared in a poster in the store, an employee booklet, and on the personnel supervisor's employee checklist. Upon her return in 1980, in addition to signing the checklist, plaintiff checked boxes: "1. Read Welcome Booklet"; 4(J). No Merchandise Saved Under Counters For Personal Use or For Customers—Use Lay-A-Way System; 4(K). Explain Entire Procedure on Employee Purchase." By her admission, the then store manager in 1976, had explained defendant's employee purchase policy when plaintiff began employment. The employee

checklist states: "I understand further that violations of these policies can lead to disciplinary action or dismissal."

Despite company policy, store manager Nataraj at times allowed employees to put items in a bag and to place the bag, often after stapled shut, in a variety of places in the store pending the employee's payment for the merchandise. Sometimes these bags of merchandise were kept upstairs outside the manager's office. Mr. Mundy and Mr. Hullhorst were unaware of these practices. Store managers, such as Nataraj, did not have discretion to alter or to overlook the policy on employee purchases. He and Edwards denied at the meeting on November 28, 1981, at which Mundy decided to dismiss plaintiff, that they permitted variations from the employee purchases policy.

Prior to dismissal, plaintiff was on good terms with Mr. Nataraj but not with assistant manager Edwards. Plaintiff has been in poor health for a number of years. Mr. Edwards criticized her work, told her to move faster and gave her jobs others would not do because work, in his words, would make her stronger. In turn, plaintiff told him that he, as she put it, was someone to talk.

One or two weeks before her second dismissal, Mr. Nataraj made a gift of a bird to plaintiff's son, Junior, who had helped both Nataraj and Edwards in the store at various times. Mr. Nataraj, plaintiff, and Junior selected the bird but it was left at the store because plaintiff was unable to pay for the bird cage and other items that Junior also selected. The next day Nataraj was absent. Edwards saw the bird in a box ready to be taken and seemed displeased. Even though it was plaintiff's merchandise, he told her to ring up the cage and other items. She told Edwards she would not take the employee 10 per cent discount, because the store had closed and there was no time. She and Edwards were irritated with each other.

A few days later, another employee told plaintiff that Edwards had said Junior did

not deserve the bird. Angered, plaintiff told her son not to do any more work for Edwards. She told Edwards she would not talk to him any further and that he was two-faced. Thereafter, when he tried to converse, she refused.

On November 27, 1981, the day of the incident that Edwards reported to Mundy, plaintiff's son was sitting at the food counter waiting for the store to be closed. Nataraj was off that day. Because of his mother's instructions, Junior was not helping Edwards. It was at that point that Edwards confronted plaintiff, who was carrying a stapled bag of unpaid for merchandise, and took the bag from her. When asked the following day, she told Munday that she had put the merchandise in the bag.

A personality clash and mutual dislike existed between Edwards and plaintiff. Edwards' actions in reporting plaintiff to Mundy for violating company policy on employee purchases was motivated by personal animus against plaintiff. Mundy and Hullhorst were unaware of Edwards' bad feeling toward plaintiff, and Nataraj, who attended the dismissal meeting with Mundy, refused, for reasons of his own, to intercede for her.

Edwards' desire to have plaintiff dismissed was not in reprisal for her having filed a complaint and sought reinstatement after her first termination. In deciding to dismiss plaintiff, Mundy and, in turn, Hullhorst, believed plaintiff had violated company policy on employee purchases and that her dismissal, on that basis, was justified and required. Neither acted out of a retaliatory motive arising from her first termination or its aftermath.

Since this case was fully tried, the ultimate fact issue is whether plaintiff has shown by a preponderance of the evidence intentional discrimination against plaintiff by defendant. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Dance v. Ripley*, 776 F.2d 370 (1st Cir.1985); *Mitchell v. Baldrige*, 759 F.2d 80 (D.C.Cir.1985).[3]

3. When a discrimination case has been tried on its merits, prima facie case analysis is no longer

In evaluating the evidence, I did not credit the testimony that plaintiff was told there would be retaliation or that, for other reasons, defendant contrived the second termination. Even if she were warned by other employees to be on guard after she was reinstated, there is no connection between the warning and what eventually occurred between her and the assistant manager. Instead, the finger of the evidence points directly at plaintiff's run-in with Edwards to account for her loss of her job. From all of the evidence, I am convinced that Edwards' obvious dislike of plaintiff; his irritation because of the store manager's gift of a bird to her son; her understandable anger when told that Edwards had said her son did not deserve the gift; her subsequent remarks to Edwards and refusal to talk to him again; and her son's refusal, at her direction, to continue to help Edwards in the store—were the causative factors that brought about Edwards' action to instigate her dismissal. These factors, however, are not related to employment discrimination by the employer and are unconnected to the proceedings instituted by her that led to her re-instatement after her first termination.

I conclude that plaintiff did not meet the burden of establishing that defendant intentionally discriminated against her.

### ORDER

AND NOW, this 24th day of June, 1986 upon trial without a jury, judgment is hereby entered against plaintiff Geraldine Cyrus and in favor of defendant F.W. Woolworth Co. as set forth in the accompanying memorandum of decision.

relevant. *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 714–15, 103

S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983). *See Mitchell v. Baldrige, supra.*